ORR *v.* ORR.

No. 17582. Submitted September 12, 1951—Decided October 10, 1951.

432

*J. V. Poole,* for plaintiff.

*A. T. Walden,* for defendant.

WYATT, Justice. There appear in the record five grounds of an amended motion for new trial. The charge of undue influence was abandoned, and was not submitted to the jury. Whether or not, under the evidence, the mental incapacity of Press Orr to execute a will at the time the will was executed was established, disposes of all questions raised in the motion for new trial and amendments thereto. In fact, that is the only question argued in this court.

The propounder made out a prima facie case by the testimony of the three subscribing witnesses to the will, to the effect that the will was freely and voluntarily executed, and that the testator appeared to be of sound and disposing mind. There was testimony by others who had known the deceased in his lifetime to the effect that his mind appeared to be good. A prima facie case having thus been made out, the burden shifted to the caveatrix. In attempting to overcome the prima facie case made out by the propounder, she offered testimony to the effect that the deceased was an old man in poor health. There was evidence that he did many things indicating that his mind was bad. This evidence was: that he would say "It is raining," when the sun was shining and there was no rain; that he would tear his clothes and tear up the quilts and blankets on the bed; that he would say, "Oh, just look at them folks fighting. Look at them fight, fight, fight. Look at them. Push them out and shut the door"—when nothing of the kind was happening; and that he would not recognize people whom he had known for a long time and would not recognize his wife. There was also evidence of other occurrences of like nature, the witnesses giving their opinions that his mind was not good, based on these facts.

A fair construction of the evidence is that all of these things happened after the will was executed. There was only one witness who testified to any happening of this kind before the will was

executed. He testified: "You ask me to tell what he said and how he acted at the time he left the first time. Before I took him home I noticed him standing up from time to time just looking for about fifteen minutes just in one direction, and then he would come to hisself after then and he would go back to his job and go to work. I noticed a time or two he would be standing just gazing, it looked like, into the sky, and I used to say to him, 'You can stand right here and look a thousand miles away, can't you?' and things like that, and then, after things would pass over, he would be kind of normal again. I would say he would look staring in one direction ten or fifteen minutes at a time."

The only doctor who testified said in part that he attended the deceased in 1946; that "he was suffering from generalized arteriosclerosis, which involved his blood vessels, of course, and his kidneys and his prostate were involved, and he was very weak . . And his mental state was one that goes along with degenerative diseases. . . He conferred with me perfectly all right and knew what I talked to him about. . . I think that he had intervals when he knew what he was saying perfectly all right at that time."

We are therefore confronted with the difficult question of the mental condition of the deceased at the time the will was executed. As this court has so often said, each will case must rest on its own facts. The decisions in other cases are generally of little help. This court has, however, settled certain questions here involved. "If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice." *Slaughter* v. *Heath*, 127 *Ga.* 747 (57 S. E. 69, 27 L. R. A. (N. S.) 1). Opinion evidence of the character here involved is admissible. See *Brock* v. *State*, 206 *Ga.* 397 (57 S. E. 2d, 279), and *Jarrard* v. *State*, 206 *Ga.* 112 (55 S. E. 2d, 706). It is also true that opinion evidence of non-expert witnesses as to the mental condition of a deceased person at the time an instrument is executed, the opinion being based upon facts occurring before and after the date the instrument is executed, may be sufficient to support a verdict as to the mental condition of the deceased at the time of the execution of the instrument, notwithstanding the fact that the

witnesses did not see the deceased on the day the instrument was executed; provided the evidence discloses facts sufficient to support a finding to the effect that his mental condition grew progressively worse, or that it was no better on the date the instrument was executed than on the dates forming the basis of the opinion evidence. See *Pantone* v. *Pantone,* 206 *Ga.* 305 (57 S. E. 2d, 77). "The true rule seems to be: If there is no evidence to the effect that the deceased had normal periods, and it is shown that his condition was one that grew progressively worse, evidence of the mental capacity of the deceased before and after the execution of the will may support a verdict finding mental incapacity at the time the will was executed, notwithstanding the testimony of the subscribing witnesses to the contrary." *Leventhal* v. *Baumgartner,* 207 *Ga.* 412, 415 (61 S. E. 2d, 810).

Here, however, we do not have that situation. Several witnesses—in fact all the witnesses, both for the propounder and the caveatrix—testified to the effect that the deceased did have perfectly normal periods up until a very short time before his death. As above stated, almost all the facts relied upon to establish the mental incapacity of the deceased occurred after the will was executed, most of them very shortly before his death. No one said that he did not have normal periods, both before and after the date the will was executed. The only doctor who testified said that the next year after the will was executed the deceased was perfectly normal, and talked with him in an intelligent manner. It further appears from the evidence that, on the date the will was executed, the deceased went to the office of his attorney and in a perfectly intelligent manner furnished the information for the preparation of the will. All of the subscribing witnesses testified that the deceased was perfectly normal the day the will was executed. We are dealing with the important right of a man to dispose, by will, of his property in accordance with his own desires. From what has been said above, we are compelled to hold that the evidence was not sufficient to carry the burden placed by law upon the caveatrix. It was, therefore, error to overrule the motion for new trial.

*Judgment reversed. All the Justices concur.*